UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAZE IRREVOCABLE TRUST and JAZE LLC,

                Plaintiff,

v.

ARTHUR VOGELGESANG and CROSSROADS ANTIQUE RESTORATION AND DELIVERY,

                Defendants

Civil Action No. 20-cv-4283

**COMPLAINT**

Plaintiffs JAZE Irrevocable Trust and JAZE LLC (collectively, "JAZE" or "Plaintiffs"), by their undersigned attorneys, for its complaint against Defendants Arthur Vogelgesang ("Vogelgesang") and Crossroads Antique Restoration and Delivery ("Crossroads" and together with Vogelgesang, "Defendants") and, states as follows:

**NATURE OF THE ACTION**

1. This is an action by JAZE to recover valuable works of art and objects worth more than $9 million that were stolen by Vogelgesang and his company Crossroads.

2. JAZE owns a multi-million dollar portfolio of artwork and other valuable objects including works by world famous artists such as Andy Warhol and Roy Lichtenstein (the "Artwork").

3. Over the years, JAZE had employed Vogelgesang and his company Crossroads, as movers, to deliver the Artwork safely to different locations at JAZE's direction and also to return the Artwork to storage facilities on JAZE's instruction.

1

4. Since October 2018, JAZE has kept the some of the Artwork (the "Life Storage Artwork") in storage at a facility in Southampton, New York owned and operated by Life Storage (the "Life Storage Facility").

5. In July 2020, Vogelgesang carried out a brazen theft, entering the Life Storage Facility without informing JAZE and removing the valuable Life Storage Artwork.

6. JAZE only discovered Vogelgesang's audacious theft when the JAZE Trustee made a routine phone call to the Life Storage Facility and was informed that Vogelgesang had personally appeared and emptied out the contents of the storage rooms on false pretenses.

7. When confronted by police detectives, Vogelgesang told a series of lies, including the verifiably false claims that the Artwork had been moved months earlier to a different storage facility and/or that he had only removed items that he owned.

8. Although the criminal investigation of Vogelgesang is still pending, JAZE brings this civil action for compensatory and injunctive relief and to obtain to return of the valuable Life Storage Artwork and other pieces of Artwork converted by Defendants.

**PARTIES**

9. JAZE Irrevocable Trust is an irrevocable trust formed under the laws of the State of Delaware. It has two co-trustees, one of whom is a citizen of the State of Delaware and the other who is a citizen of the State of New York (and is referred to herein as the "JAZE trustee").

10. JAZE LLC is a limited liability company organized under the laws of Delaware. The JAZE Irrevocable Trust is the sole member of JAZE LLC and is fully authorized to act on behalf of JAZE LLC.

11. Defendant Arthur Vogelgesang is a citizen of the State of New Jersey. He operates a moving and restoration business under the name Crossroads Antique Restoration and Delivery.

12. Crossroads Antique Restoration and Delivery is the name that Vogelgesang uses for his moving and restoration business. However, no business with that name is listed in the New York Secretary of State's business entity database, either active or inactive. In addition, entity searches did not turn up any business with that name in New Jersey or Delaware. Plaintiffs believe and thus allege, that Crossroads is simply a trade name used by Vogelgesang for his moving and restoration business but has named Crossroads as a defendant as a precaution in the event that proof is presented that Crossroads is an existing entity.

## JURSDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Delaware and New York, Defendants are citizens of New Jersey, and the amount in controversy exceeds $75,000.

14. This Court has personal jurisdiction over Defendants because, among other things: (a) Defendants regularly conduct business in the state of New York and derive substantial revenues from such New York activities; (b) Defendants derive substantial revenue from interstate commerce and had reason to expect their activities would have consequences in New York; (c) Defendants maintain a post office box in New York for the receipt of business correspondence; (d) the facts giving rise to this action arise from the Defendants' conduct of business in New York, including but not limited to the movement of millions of dollars of artwork to and from locations in the state; and (e) Defendants committed tortious acts in the state of New York causing injury to Plaintiffs in New York and to property located in New York.

15. Venue exists in this district because the events giving rise to this action took place in Suffolk County, New York.

## FACTUAL ALLEGATIONS

16. JAZE owns many works of art, furniture, and other artistic objects of great value. Its holdings include exceptional works by renowned artists such as Roy Lichtenstein, Andy Warhol, Francis Bacon, Carol Dunham, Manolo Valde, Robert Indiana, Phillipe Pasqua, Guo Jin, among many others. The total value of this Artwork is more than $9 million.

17. Over the years, JAZE has employed Vogelgesang and his company Crossroads, as movers, to deliver the Artwork safely to different locations at JAZE's direction and also to return the Artwork to storage facilities on JAZE's instruction.

18. In 2018, much of this Artwork, referred to herein as the Life Storage Artwork, was on display at a property located in Southampton, New York.

19. In October 2018, JAZE asked Vogelgesang to move the Life Storage Artwork from the Southampton property to the Life Storage Facility. After completing the move, Vogelgesang issued an invoice, verifying that he had "moved out . . . All Furniture, paintings, Artwork" from the Southampton property to the Life Storage Facility.

20. In the fall of 2019, Vogelgesang assisted JAZE in organizing a different storage facility JAZE used in Hudson, New York (the "Hudson Storage Facility"), in anticipation that the Life Storage Artwork, located at the Life Storage Facility would be moved to Hudson. At that time, while reviewing Defendants' invoices and inventories, JAZE discovered a disturbing pattern of items inexplicably disappearing following a move conducted by Vogelgesang and Crossroads.

21. For example, in 2013, JAZE had asked Vogelgesang and Crossroads to pick up certain paintings from an art gallery and return them to storage, including three paintings by Jessica Lichtenstein. But, in January 2019, after inquiring with the gallery, JAZE learned that although Vogelgesang and Crossroads picked up all three paintings, only one painting made it back to the storage facility.

22. As another example, in 2017, JAZE asked Vogelgesang to move some pieces of art from one address in Southampton, New York to another Southampton address. During that move, the portrait "Miss May 1" by the prominent artist Kiki Smith disappeared. This portrait has still not yet been found.

23. In December 2019, an individual familiar with the Artwork met with police detectives in Riverhead, New York, to express concerns about the missing Kiki Smith "Miss May 1" portrait and other pieces of Artwork that had disappeared after being moved by Vogelgesang and Crossroads. The detective advised that Vogelgesang should be asked to provide pick up slips for the missing items.

24. Although Vogelgesang agreed to provide the documentation, he never did. Instead, in February 2020, Crossroads and Vogelgesang sent JAZE invoices totaling $20,000. However, JAZE objected to paying these invoices until Vogelgesang could account for the missing Artwork.

25. Vogelgesang and Crossroads also sent JAZE an invoice for the cost of moving three paintings from the Life Storage Facility to Sotheby's on October 9, 2019. However, JAZE had only authorized the move of two paintings and Vogelgesang could not explain the discrepancy. Accordingly, JAZE also disputed this invoice.

26. On or around June 21, 2020, JAZE asked Crossroads and Vogelgesang to pick up the Life Storage Artwork from the Life Storage Facility in Southampton and move the items to the Hudson Storage Facility.

27. On June 21, 2020, Vogelgesang texted the JAZE Trustee and proposed a charge of $6500 for the move, including all costs such a packing, loading, fuel and tolls.

5

28. On June 22, 2020, the JAZE Trustee responded that the terms were acceptable and explained that the move would have to be completed in five days. Vogelgesang responded by proposing to start the move on Friday June 26 and provided slightly revised terms, including $6000 for the move, and an additional charge of $135.00 per hour for any work needed to prepare the Hudson Storage Facility to receive the Artwork. He also confirmed his understanding that the move would need to be completed by the following Tuesday and stated: "I can tell my guys not to make any plans for the weekend." On Thursday, June 25, 2020, Vogelgesang followed up, writing to the JAZE Trustee to add that if blankets needed to be supplied (and not returned) he would charge an additional $15 per blanket.

29. The same day, on June 25, the JAZE Trustee accepted the terms that Vogelgesang proposed, further representing that the $6000 would be paid by check up front and adding for good measure a commitment to pay the outstanding invoices for prior work by the end of the year.

30. On Friday, June 26, 2020, at 9:30 AM, individuals who worked for Vogelgesang and Crossroads appeared at the Life Storage Facility in Southampton for the move, but Vogelgesang was not present. The manager of the Life Storage Facility refused to grant access to the movers because Vogelgesang was the designated contact on the contract with the Life Storage Facility and, thus, his physical presence was required before the contents of the storage rooms could be removed. The JAZE Trustee called Vogelgesang who provided assurances that he would arrive by 2:30 PM. However, around noon, Vogelgesang informed the JAZE Trustee that he would not appear and would not perform on the parties' agreement, thus repudiating it.

31. The following Tuesday, June 30, 2020, Vogelgesang attempted to leverage the situation to coerce JAZE into paying more money, insisting on immediate payment of the past (disputed) invoices as well as additional payments of $7000 to Samuel Leeds, an acquaintance

of Vogelgesang. Even though JAZE (and not Vogelgesang or Crossroads) paid the monthly fees to the Life Storage Facility, Vogelgesang explained that he would exploit the fact that he was the designated contact on the contract with the Life Storage Facility to extort JAZE into paying the disputed invoices and to prevent JAZE from hiring another mover to perform the move.

32. Indeed, that same day, Vogelgesang texted Leeds: "I'm not releasing anything from [the] storage until the bills are paid. That's why I'm asking if you got paid. If you didn't[,] I won't [r]elease anything."

33. A month later, on July 30, 2020, the JAZE Trustee called the Life Storage Facility to check on amounts owed under the storage contract. The Life Storage Facility representative responded that Vogelgesang had paid the outstanding amounts due and had removed all the items from the three storage units. This process took about three days. JAZE did not authorize this move and was never informed about it prior to the inquiry made to the Life Storage Facility.

34. The JAZE Trustee contacted Vogelgesang later the same day. Vogelgesang admitted that he had taken the Life Storage Artwork and insisted that JAZE must satisfy his financial demands before he would release the Life Storage Artwork to JAZE. In the ensuing discussions, Vogelgesang raised these extortionate demands – without justification or explanation – to $200,000.

35. That same day Vogelgesang again texted Leeds: "I'm working on your bill to get you paid. Please call me when you get time." But after Leeds learned of the theft, he informed Vogelgesang that he did not want Vogelgesang to take these actions on his behalf.

36. Following the call with Vogelgesang, the JAZE Trustee informed the Southampton Village Police of Vogelgesang's theft of the Life Storage Artwork.

37. On Wednesday, August 12, 2020, the JAZE Trustee called Vogelgesang again in a final attempt to recover the Life Storage Artwork without further legal action. Vogelgesang refused to return the Life Storage Artwork, nor would he discuss the matter with the JAZE Trustee.

38. On August 14, 2020, JAZE contacted the Southampton Village Police for an update on the criminal investigation into Vogelgesang's theft of the Life Storage Artwork and was informed by Detective Rios that Vogelgesang had claimed that (i) he was only owed $2000, not $20,000; and (ii) that he had moved the Life Storage Artwork from the Life Storage Facility to the Hudson Storage Facility months earlier at JAZE's request.

39. Vogelgesang's first statement to Detective Rios contradicted his extortionate demands that JAZE pay $27,000 (and then later $200,000).

40. Vogelgesang's second statement was a blatant fabrication: the Life Storage Artwork was never moved to from the Life Storage Facility to the Hudson Storage Facility because Vogelgesang had repudiated the parties' agreement. Indeed, the Life Storage Facility confirmed that Vogelgesang had removed the Life Storage Artwork from their facility in July 2020, not months earlier. Moreover, Vogelgesang moved the Life Storage Artwork to a still unknown and undisclosed destination without authorization from JAZE.

## FIRST CAUSE OF ACTION
### (Replevin)

41. Plaintiffs repeat, reallege, and incorporate the allegations set forth in paragraphs 1 through 40 above as if fully set forth herein.

42. Plaintiffs have, at all relevant times, been the rightful owners of the Artwork, including the Life Storage Artwork which as of October 2018, they kept at the Life Storage Facility in Southampton, New York.

43. Without authorization or permission from Plaintiffs, Defendants wrongfully removed the Life Storage Artwork from the Life Storage Facility in Southampton, New York and continue to wrongfully hold the Life Storage Artwork.

44. Without authorization or permission from Plaintiffs, Defendants also took possession of other pieces of Artwork, including but not limited to the Kiki Smith "Miss May 1" portrait.

45. Plaintiffs are entitled to possession of the Artwork and have demanded that Defendants return all Artwork in Defendants' possession.

46. Defendants have unambiguously refused to disclose the whereabouts of the Artwork or to return the Artwork to the Plaintiffs.

47. The approximate value of the Artwork in Defendants' possession is $9,259,100.

48. Plaintiffs are aware of no defense to this claim.

49. By reason of the foregoing, Plaintiffs are entitled to an order of seizure and the return of the Artwork.

## SECOND CAUSE OF ACTION
### (Conversion)

50. Plaintiffs repeat, reallege, and incorporate the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

51. Plaintiffs have, at all relevant times, been the rightful owners of the Artwork, including the Life Storage Artwork which as of October 2018, they kept at the Life Storage Facility in Southampton, New York.

52. Without authorization or permission from Plaintiffs, Defendants removed the Life Storage Artwork from the Life Storage Facility in Southampton, New York.

53. Defendants also removed other pieces of Artwork over a period of years in connection with other moves, as described in this complaint.

54. Plaintiffs are entitled to possession of the Artwork and have demanded that Defendants return the Artwork.

55. Defendants have unambiguously refused to disclose the whereabouts of the Artwork in their possession or to return the Artwork to the Plaintiffs.

56. The approximate value of the Artwork in Defendants' unauthorized possession is $9,259,100.

57. By reason of the foregoing, Plaintiffs are entitled to judgment against the Defendants in the amount of no less than $9,259,100, plus interest, costs, and attorney's fees, and equitable and injunctive relief as may be proper.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

58. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 57 above as if fully set forth herein.

59. Plaintiffs had a valid contract with Defendants under which Defendants agreed to move the Life Storage Artwork from Southampton, New York to designated storage facility in Hudson, New York, beginning on June 26, 2020 and completing the job on or before June 30, 2020.

60. Plaintiffs performed their obligations under the contract by appearing at the Southampton storage facility and tendering a check for the $6000 price for the job.

61. Defendants breached the contract by: (1) refusing to perform the contracted moving services, (2) refusing to permit Plaintiffs to contract with another moving provider to

accomplish the move, and then (3) secretly removing the Life Storage Artwork from the storage facility and refusing to reveal the location of the stolen goods.

62. Vogelgesang is personally liable on the contract because he personally agreed to be bound by the terms (or alternatively because Crossroads is a fictitious entity).

63. By reason of the foregoing, Plaintiffs are entitled to judgment against the Defendants in the amount of no less than $6,797,400 (the value of the Life Storage Artwork), plus interest, costs, and attorney's fees as applicable.

## FOURTH CAUSE OF ACTION
### (New Jersey Fraud Act NJSA 56:8 et seq.)

64. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

65. Vogelgesang resides in New Jersey and operates his moving and restoration business from the state of New Jersey.

66. The conduct of Defendants as set forth in this complaint constitutes an unlawful practice, as well as deception, false pretense, false promise, and misrepresentation, among other wrongs. In particular, and without limitation, Defendants caused themselves to be designated as the representative of Plaintiffs on the contract with Life Storage for the storage of the Life Storage Artwork, and abused and exploited that status to prevent the true owner from transferring the Artwork to another storage location, to attempt to extort money from Plaintiffs, and then ultimately to steal the Plaintiffs' property. Defendants also promised that they would move the Life Storage Artwork from the Life Storage Facility in Southampton, New York to the Hudson Storage Facility in Hudson, New York, but did not perform that service and instead used the cover of their apparent status as movers to steal the Life Storage Artwork for themselves. Defendants also (without limitation) held themselves as providers of moving services and provided such services to JAZE

11

over the years, but abused and exploited their authority to move pieces of Artwork on JAZE's behalf to steal additional pieces of Artwork.

67. As a result of Defendants' unlawful conduct as set forth in this complaint, Defendants have suffered an ascertainable loss in that they have lost possession of Artwork, worth approximately $9,259,100.

68. Defendants' theft of Artwork and other unlawful acts as described in this complaint are the proximate causes of Plaintiffs' losses.

69. By reason of the foregoing, Plaintiffs are entitled to judgment against the Defendants for their compensatory damages of no less than $9,259,100, tripled to $ 27,770,300, plus interest, costs, and attorney's fees, and equitable and injunctive relief as may be proper.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

70. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 69 above as if fully set forth herein.

71. Plaintiffs are the lawful owners of the Artwork.

72. Defendants are exercising dominion and control over Artwork in violation of Plaintiffs' ownership rights.

73. By reason of the foregoing, Plaintiffs seek a declaration that they are entitled to ownership and possession of the Artwork currently in Defendants' possession.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

a) Enter judgment against the Defendant and in favor of Plaintiffs;

b) Award compensatory damages to Plaintiff in the base amount of $9,259,100, tripled to $ 27,770,300 by virtue of NJSA 56:8-19.

c) Award Plaintiffs interest, reasonable costs, attorney's fees, and disbursements;

d) Enter a declaration stating that Plaintiffs as the sole lawful owners of the Artwork;

e) Order the seizure of the Artwork in Defendants' possession and its return to Plaintiffs;

f) Grant such other relief as it deems necessary and proper.

Dated: New York, New York
September 14, 2020

Respectfully submitted,

PRESS KORAL LLP

By: _____
Jason M. Koral
jkoral@presskoral.com

641 Lexington Avenue, 13th Floor
New York, NY 10022
Phone: (212) 520-8270

*Attorney for Plaintiffs*